JOHN B. TREVOR, Jr., and JAMES B. COLGATE, Appellants, *v.* JOHN WOOD, GEORGE W. WOOD, and JAMES CULLEN, Respondents.

*Contract—Time of Consummation—Letter or Telegram.*

Where there is a proposition on the one part, and an acceptance on the other, manifested by distinct overt acts, as the sending of a letter, or a telegram, the contract is consummated from the time such acceptance was thus signified.

APPEAL from a judgment of the Supreme Court, rendered at General Term, in the First District, reversing a judgment entered upon the report of Hon. William Mitchell, referee, and ordering a new trial before the same referee.

The Appellants have stipulated that if the judgment be affirmed, judgment absolute may be entered against them.

The Appellants are dealers in bullion in New York, and the Respondents are dealers in bullion in New Orleans. In 1859 they agreed to deal with each other in the purchase and sale of dollars, and that all communications between them in reference to such transactions should be by telegraph.

On 30th January, 1860, the Appellants telegraphed from New York, to the Respondents, at New Orleans, asking at what price they would sell one hundred thousand Mexican dollars. On 31st of the same month the Respondents answered that they would deliver fifty thousand at seven and one-fourth, and on the same day the Appellants telegraphed from New York, to the Defendants at New Orleans, as follows:

"To JOHN WOOD & Co.: Your offer fifty thousand Mexicans at seven and one-quarter accepted; send more, if you can.
                                        "TREVOR & COLGATE."

At the same time the Appellants sent by mail to the Respondents, a letter acknowledging the receipt of the Respondents' telegram, and copying the Appellants' telegraphic answer. On the same day the Respondents had also sent by mail a letter to the Appellants, copying Respondents' telegram of that date. On the next

day (1st February, 1860), the Appellants again telegraphed to the Respondents as follows:

"To JOHN WOOD & Co.: Accepted by telegraph yesterday your offer for fifty thousand Mexicans; send as many more, same price. Reply.

"TREVOR & COLGATE."

This telegram, as well as that of 31st of January, from the Appellants, did not reach the Respondents until 10 A.M., on 4th February, 1860, in consequence of some derangement in a part of the line used by the Appellants, but which was not known to the Appellants until 4th February, when the telegraph company reported the line down. On 3d February the Respondents telegraphed to the Appellants as follows: "No answer to our despatch—dollars are sold;" and on the same day they wrote by mail to the same effect. The Appellants received this despatch on the same day, and answered it on the same day, as follows: "To John Wood & Co.: Your offer was accepted on receipt;" and again the next day, "The dollars must come, or we will hold you responsible. Reply. Trevor & Colgate;" and again on 4th February, insisting on the dollars being sent "by this or next steamer," and saying, "Don't fail to send the dollars at any price." On the same 4th February, the Respondents telegraphed to Appellants, "No dollars to be had. We may ship by steamer, twelfth, as you proposed, if we have them." No dollars were sent, and this action was brought to recover damages for an alleged breach of contract in not delivering them.

The referee found for Plaintiff $219.33.

SCRUGHAM, J.—The offer of the Respondents was made on the 31st January, and they did not attempt to revoke it until the 3d of February. The offer was accepted by the Appellants before, but the Respondents did not obtain knowledge of the acceptance until after this attempted revocation. The principal question, therefore, which arises in the case is, whether a contract was

created by this acceptance, before knowledge of it reached the Respondents.

The case of Mactier *v.* Frith, in the late Court of Errors (6 Wend. 103), settles this precise question, and was so regarded by this Court in Vassar *v.* Camp (1 Kernan, 441), where it is said that the principle established in the case of Mactier *v.* Frith was, " that it was only necessary that there should be a concurrence of the minds of the parties upon a distinct proposition, manifested by an overt act ; that the sending of a letter announcing a consent to the proposal was a sufficient manifestation, and consummated the contract from the time it was sent."

There is nothing in either the case of Mactier *v.* Frith or in that of Vassar *v.* Camp, indicating that this effect is given to the sending of a letter, because it is sent by mail through the public post-office ; and, in fact, the letter referred to in the first case could not have been so sent, for it was to go from the city of New York to Jacmel, in the island of St. Domingo, between which places there was at that time no communication by mail.

The sending of a letter accepting the proposition is regarded as an acceptance, because it is an overt act, clearly manifesting the intention of the party sending it to close with the offer of him to whom it is sent, and thus making that " aggregatio mentium" which is necessary to constitute a contract.

Mr. Justice Marcy, in delivering the leading opinion in Mactier *v.* Frith says : " What shall constitute an acceptance will depend, in great measure, upon circumstances. The mere determination of the mind, unacted on, can never be an acceptance. Where the offer is by letter, the usual mode of acceptance is the sending of a letter announcing a consent to accept; where it is made by a messenger, a determination to accept, returned through him, or sent by another, would seem to be all the law requires, if the contract may be consummated without writing. There are other motives which are equally conclusive upon the parties ; keeping silence, under certain circumstances, is an assent to a proposition ; anything that shall amount to a manifestation of a formed determination to accept, communicated, or put in the

proper way to be communicated to the party making the offer, would doubtless complete the contract."

It was agreed between these parties that their business should be transacted through the medium of the telegraph. The object of this agreement was to substitute the telegraph for other methods of communication, and to give to their transactions by it the same force and validity they would derive if they had been performed through other agencies.

In accordance with this agreement, the offer was made by telegraph to the Appellants in New York; and the acceptance, addressed to the Respondents in New Orleans, was immediately despatched from New York, by order of the Appellants.

It cannot, therefore, be said that the Appellants did not put their acceptance in a proper way to be communicated to the Respondents, for they adopted the method of communication which had been used in the transaction by the Respondents, and which had been selected by prior agreement between them, as that by means of which their business should be transacted.

Under these circumstances the sending of the despatch must be regarded as an acceptance of the Respondents' offer, and thereupon the contract became complete.

I cannot conceive upon what principle an agreement to communicate by telegraph can be held to be in effect a warranty by each party that his communication to the other shall be received. On the contrary, by agreeing beforehand to adopt that means of communication, the parties mutually assume its hazards, which are principally as to the prompt receipt of the despatches.

The referee finds as a fact that the Respondents answered the telegram of the Appellants, asking at what price they would sell 100,000 Mexican dollars, by another telegram, as follows, viz. :

"Trevor & Colgate, New York: Will deliver fifty thousand at seven and one-quarter, per Moses Taylor. Answer.

"John Wood & Co."

It was proved on the trial that this telegram was sent by the Respondents, and a letter of the same date, signed by them, re-

peating the telegram and stating that they had sent it, was read in evidence.

This affords sufficient evidence of subscription by the Respondents to take the case out of the statute of frauds.

The judgment should be reversed.

All the judges concurring except BOCKES & GROVER, JJ., who concurred only in the result.

Judgment reversed.